# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN J. KELLY,                )
                              )
        Plaintiff,            )        2: 11-cv-00193
    v.                        )
                              )
UNITED STATES STEEL CORP.,    )
                              )
        Defendant.            )

## MEMORANDUM OPINION AND ORDER OF COURT

Presently pending before the Court is DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 36), with Brief in Support (Doc. No. 39), Reply Brief (Doc. No. 57) and Appendix. Plaintiff has filed a Brief in Opposition (Doc. No. 45) to the motion and Sur-Reply Brief (Doc. No. 61). The parties have developed the evidentiary record and filed Defendant's Concise Statement of Undisputed Material Facts (Doc. 38), Plaintiff's Response to Defendant's Concise Statement of Undisputed Material Facts (Doc. No. 47) and Plaintiff's Counterstatement of Undisputed Material Facts. The motion is ripe for disposition.

After careful consideration of U.S. Steel's motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that genuine issues of material fact remain. For the reasons that follow, U.S. Steel's motion will be denied.

## Factual Background

Kelly began working for U.S. Steel in 1988 as an internal auditor and held various analyst positions in the company until 2001, when he moved to a managerial position with a subsidiary of U.S. Steel. (Doc. No. 47). When the subsidiary merged with U.S. Steel's Real

1

Estate Department, Kelly became the Manager of Real Estate Accounting with a primary job function to manage accounting processes. (Doc. No. 47; Kelly Aff. ¶ 6; Beecher Aff. ¶ 8). While holding this position, Kelly reported to Tom Beecher, Director of the Real Estate Accounting Department. It is undisputed that prior to retiring from U.S. Steel, Beecher recommended to his supervisor, Nick Harper, that Kelly replace him as Director. (Doc. No. 47; Kelly Dep. p. 17, 19; Harper Dep. p. 6, 42). It is also undisputed that prior to Beecher's retirement, Kelly had no reported problems with his performance, and had received good reviews throughout his twenty (20) plus years with U.S. Steel. (Doc. No. 47).

In April 2009, thirty-nine (39) year-old Laurie Recchia was selected to succeed Beecher as Director of Real Estate Accounting, rather than fifty-two (52) year old Kelly. (Doc. No. 47). Even though it is not an issue in this litigation, Kelly believes that age was a motivating factor for this decision, as his supervisor had recommended him for the position and his experience, management skills, and technical skills were superior to those of Recchia. Kelly maintained his position as Manager of Real Estate Accounting and reported directly to Recchia on accounting issues. *Id.*

On June 24, 2009, three months after she became Director, Recchia met with Kelly allegedly to address concerns she had about his performance. *Id.* On November 23, 2009, Recchia and the Real Estate Department's Human Resource Manager, Maria Lamb, met with Kelly and advised him that he was going to be placed on a Performance Improvement Plan ("PIP"). *Id.* On February 19, 2010, Recchia and Lamb again met with Kelly and told him that he was discharged because he had not met the requirements of the PIP. *Id.* Clay Reigel, thirty-five (35) at the time, subsequently took over the task of managing accounting processes. *Id.*

## Procedural Background

On August 9, 2010 Kelly filed a charge of age and sex discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). The charge was cross-filed with the Pennsylvania Human Relations Commission ("PRHC") on August 25, 2010. Kelly filed the instant action in this Court on February 11, 2011, in which he asserts claims for termination due to his age under the Age Discrimination in Employment Act, 29 U.S.C. §621, et seq. ("ADEA") and the Pennsylvania Human Relations Act, 43 P.S. § 951, et. seq. ("PHRA"). In *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 465 (3d Cir. 2005) the United States Court of Appeals for the Third Circuit determined that PHRA claims are to be analyzed according to the same standard as ADEA claims, therefore the following analysis applies to both of the Plaintiff's claims.

## Standard

*I. Standard of Review*

Summary judgment is only appropriate if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Therefore, the court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *see also Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993) ("Summary judgment is precluded if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law.") An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson.*, 477 U.S. at 248.

In order to be entitled to summary judgment, the moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Conoshenti v. Public Service Electric & Gas Company*, 364 F.3d 135, 140 (3d Cir. 2004). When the moving party has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. *See Anderson*, 477 U.S. at 248; *see also McGreevy v. Stroup,* 413 F.3d 359, 363-64 (3d. Cir. 2005).

In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Matreale v. New Jersey Dept of Military & Veterans Affairs*, 487 F. 3d 150, 152 (3d Cir. 2007). Final credibility determination on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *See Josey*, 996 F.2d at 632.

*II. Summary Judgment Standard As To Interested Witnesses*

Kelly argues that summary judgment is precluded in this instance because the Court is required to disregard the testimony of Recchia and members of the Human Resources Department, as they are "interested witnesses." In contrast, U.S. Steel contends that the Court cannot disregard the uncontradicted testimony of an interested witness.

The United States Supreme Court has established in *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 151 (2000), that at the summary judgment stage of an age

4

discrimination case, the court should review the entire record but "must disregard all evidence favorable to the moving party that the jury is not required to believe." For example, a jury may choose to disbelieve the testimony of an interested witness such as the decision-maker. A court may, however, consider "evidence supporting the moving party that is uncontradicted and unimpeached**,** at least to the extent that that evidence comes from disinterested witnesses." *Id.* The Third Circuit has followed the command of the Supreme Court to disregard the testimony of an interested witness, as well as an interested witnesses' uncontradicted testimony, where such supports the moving party. *See, e.g., Hill v. City of Scranton*, 411 F.3d 118, 129 n. 16 (3d Cir. 2005) (*citing Reeves*, 530 U.S. at 151).

In *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir. 2009), involving a claim under § 42 U.S.C. 1983, our Court of Appeals stated, in reference to *Hill*, "in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness." The statement in *Lauren W.* is dictum, does not state supporting authority, and must be reconciled with the Supreme Court's direction in *Reeves*, which is an ADEA case. *Compare* 480 F.3d at 272 *with* 530 U.S. at 151.

Here, however the Court need not reconcile the apparent inconsistency between *Hill* and *Lauren W.* as U.S. Steel's argument is misplaced. The Court recognizes that U.S. Steel has articulated 183 paragraphs within its Concise Statement of Material Facts, the majority of which Kelly disputes. Thus, even accepting the uncontradicted and unimpeached aspects of Recchia's testimony, there still remain genuine issues of material fact throughout the record.

*III. Discrimination Claims*

Under the ADEA, it is "unlawful for an employer to . . . discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age" when the individual is at least forty (40) years old. 29 U.S.C. §§ 623(a), 631(a). Where, as here, the plaintiff seeks to prove his or her case through circumstantial evidence rather than direct evidence, the three-stage shifting burdens of proof developed for employment discrimination cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies.

In the first prong of the analysis, a plaintiff must establish a *prima facie* case of discrimination which requires him to demonstrate that: 1) he was a member of the protected age class; 2) that he was qualified to hold the position; 3) he suffered an adverse employment decision; and 4) he was replaced by a significantly younger individual to create an inference of age discrimination. *See Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 330 (3d Cir. 1995). After the Plaintiff establishes all the elements of a *prima facie* case, "the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action." *Smith v. City of Allentown*, 589 F.3d 684, 689-90 (3d Cir. 2009). Once the employer "articulates such a reason, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination." *Id.* At all times, however, the burden of persuasion remains with the plaintiff. *Id.*

**Discussion**

*I. Prima Facie Case*

U.S. Steel claims that Kelly has failed to satisfy the second element of a *prima facie* case

because he cannot show that he was qualified to hold the position of Director of Real Estate Accounting. To support its contention, U.S. Steel explains that Kelly did not meet its legitimate job expectations and therefore was not qualified. The Court cannot agree.

There is a "low bar for establishing a *prima facie* case of employment discrimination" and the Court of Appeals has particularly stated that disputes over subjective qualifications should be reserved for the second and third steps of the McDonnell Douglass framework. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006) (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992)). First, the Court recognizes that Kelly obtained a bachelor of science in accounting degree, a masters of business administration, and is a certified management accountant and certified public accountant. Additionally, he had held his position since 2003 and had not received a negative review before Recchia became his supervisor. Indeed, Beecher specifically recommended that Kelly take over his position of Director of Real Estate Accounting. Accordingly, the Court finds that Kelly possessed the objective qualifications necessary to satisfy the second element of a prima facie case. *See Hugh v. Butler County Family YMCA*, 418 F.3d 265, 268 (3d Cir. 2005).

U.S. Steel also argues that Kelly does not satisfy the fourth element of a *prima facie* case because he cannot establish that his position was filled by a substantially younger individual. In making this assertion, Defendant contends that Kelly's duties were redistributed among several people, and therefore he was not replaced. *See Grosjean v. First Energy Corp.*, 349 F.3d 332 (6th Cir. 2003) (holding that an employee is replaced only when another employee is hired or reassigned to perform the Plaintiffs duties). U.S. Steel's argument lacks merit, as case law within the Third Circuit clearly establishes that an employee can satisfy the fourth element of a *prima facie* case even though several employees have taken over his former duties. *See, e.g.,*

*Steward v. Sears Roebuck & Co.,* 231 F. App'x 201, 210 (3d Cir. 2007) (considering the age difference between a former employee and several individuals who took over his duties). Moreover, it is undisputed that Kelly's primary job function was the management of accounting processes, that Clay Reigel assumed this position, and that there is a seventeen (17) year age difference between these two employees. (Doc. No. 47). Thus, this Court finds that Plaintiff has satisfied the fourth element and has therefore established his *prima facie* case.

## II. Plaintiff's Proof Of Pretext

In this case, U.S. Steel's proffered rationale for Kelly's discharge essentially consists of his poor work performance, heavily detailed within the record through specific incidents, and his failure to improve this performance to a satisfactory level over the course of the PIP. Recchia testified that she had concerns about Kelly's job performance from the beginning of working with him, which she discussed before placing him on a PIP. *Id.* After placing Kelly on the PIP, Recchia allegedly continued to have various issues with him, which, after meeting with her supervisor, Nick Harper, led to his termination. *Id.*

Because U.S. Steel has satisfied its burden at step two by proffering a legitimate business reason for its action, the burden shifts back to Kelly to show that U.S. Steel's asserted reasons were a pretext for age discrimination. A plaintiff may meet this burden by introducing evidence from which a fact finder could either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause for the employer's actions. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). In *Fuentes*, the Third Circuit Court of Appeals further clarified a plaintiff's requirements at step three: to demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons for its action that a

8

reasonable factfinder could rationally find the, unworthy of credence." *Id.* at 765.

The United States Supreme Court has recently found in *Gross v. FBL Financial Services, Inc.* that "the ordinary meaning of the ADEA's requirement that an employer took adverse action because of' age is that age was the reason that the employer decided to act." *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343, 2351(2009). Thus, in order for a plaintiff to establish pretext, he must not simply show that age was a "motivating factor," but rather demonstrate that age was a determinative factor or the "but for cause of the employer's adverse decision." *Id.* Notably, the Third Circuit Court of Appeals has confirmed that *Fuentes* otherwise remains in effect and that "the but-for causation standard required by *Gross* does not conflict with our continued application of the *McDonnell-Douglas* paradigm in age discrimination cases." *Smith,* 589 F.3d at 691.

U.S. Steel primarily argues that it is entitled to summary judgment because Kelly's subjective disagreement with the PIP and his eventual termination do not demonstrate pretext. U.S. Steel relies on *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997), in which our appeals court recognized that to determine whether a plaintiff has demonstrated pretext, "[t]he question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." In *Keller*, the court further explained that to survive the summary judgment stage, a plaintiff must show that the employer's decision "was so plainly wrong that it cannot have been been the employer's real reason." While these are correct statements of law, they do not warrant summary judgment in this case.

Although there are several ways to demonstrate pretext, one way is to "contradict the core facts put forward by the employer as a legitimate reason for its decision." *Kautz*, 412 F.3d at 467. (internal citation omitted). Also, the Court of Appeals has found in *Fuentes* that if "the

9

defendant proffers a bagful of legitimate reasons," and a plaintiff casts "substantial doubt on a fair number of them," such "may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons." *Fuentes,* 32 F.3d at 764 n. 7.

Moreover, the Third Circuit has instructed courts to review the record as a whole and "concentrate not on individual incidents, but on the overall scenario." *Bray v. Marriott Hotels*, 110 F.3d 986, 991 (3d Cir. 1997) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990)); see also *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1083 (3d Cir. 1996). Thus, a court at the summary judgment stage must determine if the totality of the evidence, rather than the each individual argument, permits a reasonable factfinder to infer that Kelly was terminated based on age. *See Id.*

The overall scenario, viewed in the light most favorable to Kelly, permits a reasonable jury to infer age discrimination. Kelly was employed by U.S. Steel for over twenty (20) years at the time of his termination and had previously received only positive reviews throughout his tenure with Defendant. Yet shortly after Recchia became his supervisor, Kelly was placed on a PIP and was ultimately terminated. Recchia and Reigel, who assumed Kelly's primary responsibilities, were both substantially younger than Kelly. Viewing the evidence in the light most favorable to Plaintiff, Kelly also claims that in June 2009, Recchia told him that "I need to step it up because it's kind of late for me to be looking for another job," a comment from which a reasonable jury could infer age-based animus. (Kelly Dep. 17).

Kelly has submitted evidence of an uninterrupted history of positive reviews from various work supervisors throughout his twenty plus years at U.S. Steel. The Third Circuit Court of Appeals has previously accepted an employee's self-evaluation and history of positive

performance when poor performance is at issue in determining pretext. *Sempier v. Johnson & Higgins,* 45 F.3d 724, 731 (3d Cir. 1995). U.S. Steel relies on *Billet v. CIGNA Corp.*, 940 F.2d 812 (3d Cir. 1991) and asserts that Kelly's own view of his performance is without merit at the summary judgment stage. However, the court in *Sempier* found that "*Billet* does not stand for the proposition that the employee's belief that his performance was satisfactory is never relevant." *Sempier v. Johnson & Higgins,* 45 F.3d 724, 731 (3d Cir. 1995) (citing *Billet,* 940 F.2d at 812). Moreover, Kelly has both testified that his performance under Recchia was the same as it always had been, and notably, has submitted an affidavit from Beecher, his prior supervisor. Thus, Kelly's past performance is not based solely on his own subjective opinion. The evidence could allow a reasonable jury to infer that Recchia sought Kelly's termination from the start of her role as his supervisor.

U.S. Steel has cited a "bagful" of incidents which accumulate to form its ultimate reason for termination, Kelly's poor performance. *Fuentes,* 32 F.3d at 764 n. 7. Among them, U.S. Steel provides that: a note receivable was reported on US Steel's financial statements at a greater value than was indicated on a letter of default to Taylor Burton; Kelly was not tracking money owed from Brock's Gap Swim Club; he gave Recchia an environmental disclosure report that lacked an amount for depreciation; he failed to meet an assignment related to a $46 million WMI Coke Option property sale; lease revenues for CSC Sugar were improperly reported by an employee whom he supervised; and he failed to communicate invoicing information related to Met-Chem to his direct reports which resulted in a transaction being recorded in the wrong month.

Kelly does not dispute that these incidents were cited on the PIP, and also recognizes that Recchia was entitled to her own managerial style and not required to have the same

standards as his prior supervisors. (Doc. No. 45). However, Kelly vigorously argues against and has provided evidence to cast "substantial doubt" on many of U.S. Steel's reasons for termination, including Recchia's numerous critiques, which he claims are subjective, trivial, and ridden with both factual disputes and issues of credibility. *Fuentes,* 32 F.3d at 764 n. 7. For instance, U.S. Steel contends that Kelly failed to schedule or reschedule meetings with Recchia to discuss the PIP, however Kelly claims that two meetings were canceled because Recchia was unavailable and one fell on a date on which Kelly had previously scheduled a vacation. Kelly also has pointed to Recchia's dissatisfaction with his formulated plan for improvements, as required under the PIP. Kelly argues that he worked diligently on the plan and was not given any guidance on how he should compose it. Based on the vague nature of this requirement and Recchia's dissatisfaction, Kelly asserts that this is also presents a genuine issue of material fact which a reasonable jury could find as a suggestion of pretext.

In essence, and without exhausting the multitude of factual challenges Kelly has provided throughout the record, Kelly reasons that U.S. Steel seized on all of these minor issues to cover-up the decision it had already made to terminate him to due to his age. The parties dispute the validity of each alleged shortcoming in great detail, and at the summary judgment stage the Court must view the record in favor of the non-moving party, Kelly.

Upon review of the totality of the record evidence, Plaintiff has presented genuine issues of disputed material fact from which a reasonable jury could find that Defendant's reasons for termination are pretextual and indicative that age was the "but for cause" of the adverse employment decision.

**Conclusion**

Upon review of the facts of this matter in the light most favorable to Plaintiff, the Court concludes that Defendant's Motion for Summary Judgment will be **DENIED**.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN KELLY, | ) |
| Plaintiff, | ) 2: 11-cv-193 |
| v. | ) |
| UNITED STATES STEEL CORP., | ) |
| Defendant. | ) |

## ORDER OF COURT

**AND NOW**, this 1st day of August, 2012, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the MOTION FOR SUMMARY JUDGMENT filed by United States Steel Corp. is **DENIED.**

The parties shall file their pretrial statements on or before August 22, 2012. Either party may thereafter file a supplemental pretrial statement on or before August 29, 2012. The Court shall conduct a pretrial conference on Friday, August 31, 2012 at 12:45 p.m. in Courtroom 6C, United States Court House, 700 Grant Street Pittsburgh, Pa. 15219.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Rodney M. Torbic
Email: rmtorbic@uss.com
Anthony F. Jeselnik
Email: afjeselnik@uss.com

Bruce C. Fox, Esquire
Email: Bruce.fox@obermayer.com
Andrew J. Horowitz, Esquire
Email: Andrew.Horowitz@obermayer.com