IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN J. KELLY,  )
    Plaintiff,  )
      ) 2:11-cv-00193
    vs.  )
      )
UNITED STATES STEEL CORPORATION,  )
      )
    Defendant.  )

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the court are DEFENDANT'S MOTION IN LIMINE (Document No. 68), with brief in support, filed by United States Steel Corporation ("U.S. Steel"); PLAINTIFF'S MOTION IN LIMINE TO STRIKE PARTS OF MARIA LAMB'S VIDEO DEPOSITION (Document No. 79), filed by Plaintiff John J. Kelly ("Kelly"); and DEFENDANT'S OBJECTIONS TO PLAINTIFF'S EXHIBITS (Document No. 80). The motions have been thoroughly briefed by both sides and are ripe for disposition.[1]

Factual and Procedural History

Kelly contends that he was discharged from his employment by U.S. Steel due to his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. § 957, *et seq.* ("PHRA"). Kelly obtained a bachelor of science degree in accounting, a Masters Degree in Business Administration ("MBA"), and is a certified management accountant and certified public accountant ("CPA"). Kelly allegedly received good performance reviews throughout his twenty (20) plus years with

---

[1] Document No. 88 purports to be a memorandum from Plaintiff in opposition to a motion in limine by U.S. Steel as to the video deposition of Maria Lamb. However, U.S. Steel's motion was not filed on the CM/ECF system or otherwise provided to the Court.

U.S. Steel as an accountant. U.S. Steel objects to Plaintiff's Exhibits 29-35, which are copies of Kelly's performance reviews for calendar years 2002 through 2008.

From 2000-2009, Kelly was Manager of Real Estate Accounting. Beginning in 2007, Kelly reported to Tom Beecher and Beecher prepared the performance reviews for 2007-2008 (Plaintiff Exhibits 34 and 35). The performance reviews reflected in Plaintiff Exhibits 29-33 were prepared by David Becker.

In April 2009, Beecher retired. Thirty-nine (39) year-old Laurie Recchia was selected to succeed Beecher as Director of Real Estate Accounting, rather than fifty-two (52) year old Kelly. Within months, Kelly was placed on a Performance Improvement Plan ("PIP") by Recchia. Thereafter, unsuccessful on the PIP, Kelly was terminated from his employment at U.S. Steel.

U.S. Steel contends that Kelly was discharged due to his poor work performance, which is extensively detailed in the record evidence. Recchia testified that she had numerous concerns about Kelly's job performance from the beginning of working with him, which she discussed before placing him on a PIP, and which eventually led to his termination. Kelly contends that U.S. Steel seized on minor issues as a pretext to cover-up the decision it had already made to terminate him to due to his age.

The Court has denied the motion for summary judgment filed by U.S. Steel. Jury selection occurred on November 6, 2012 with trial scheduled to commence on November 13, 2012.

Discussion

In its motion in limine, U.S. Steel asks the Court to preclude Kelly from introducing the following evidence: (A) performance reviews he received from supervisors prior to 2009; (B)

opinions from his former supervisors about his performance; (C) testimony regarding accounting principles and methodology; (D) Kelly's opinion of his own performance; (E) alleged age-related statements by Recchia and Nate Harper; (F) back pay from February-August 2010; (G) front pay; and (H) lost pension benefits. The Court will address these issues seriatim.

Performance Reviews and Opinions of Former Supervisor Tom Beecher

In denying the motion for summary judgment, the Court recognized that a reasonable jury could infer age discrimination based, in part, on the stark contrast between the positive performance reviews Kelly received from Tom Beecher, his immediate prior supervisor, and the negative performance reviews he received almost immediately from Recchia. The performance reviews and Beecher's testimony regarding the job performance of Kelly are probative and not unfairly prejudicial. The performance reviews are U.S. Steel documents and Beecher is a former long-time U.S. Steel employee/supervisor. Such evidence will be admissible. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 731-32 (3d Cir. 1995) (criticizing district court for excluding performance evaluations from former supervisor and explaining that it is the role of the jury to evaluate competing evaluations of employee's job performance to determine pretext).

U.S. Steel will have ample opportunity to explain its theory of the case to the jury and Kelly must be given the same opportunity. The relief sought in this motion would improperly restrict his ability to do so, and is contrary to the Memorandum Opinion and Order of Court in denying the summary judgment motion. It is not sufficient to suggest that the jury might be confused by such testimony because the Court (with the input of the parties) will thoroughly instruct the jury as to the applicable law. In accordance with the foregoing, these motions in limine are **DENIED**.

Earlier Performance Reviews

Performance reviews of Kelly prior to 2007, and the testimony of his supervisors/evaluators prior to Beecher, are obviously more remote in time and, thus, less probative of the issues in this case. On the other hand, the Court recognizes that Plaintiff Exhibits 29-33 reflect Kelly's performance on the same job, Manager of Real Estate Accounting, from which he was terminated. The performance reviews are U.S. Steel documents and are not unfairly prejudicial. The exhibits will be admissible, provided that a proper foundation is established, although the Court urges Plaintiff to be cognizant of all of the considerations set forth in Fed. R. Evid. 403 (confusion, misleading the jury, undue delay, wasting time, cumulative evidence, etc.). Testimony and/or exhibits regarding any job performance appraisals of Kelly prior to 2002 would be too remote in time and will not be admissible into evidence at trial. In accordance with the foregoing, these motions in limine are **GRANTED IN PART AND DENIED IN PART**.

Testimony Regarding Accounting Principles

U.S. Steel contends that only an expert may offer testimony about accounting principles or methodology, or an opinion about how such principles were applied by Recchia in evaluating Kelly's performance. U.S. Steel argues that Kelly is precluded by Fed. R. Evid. 702 from offering such testimony or opinions. Plaintiff points out that – given the unique education and experience of the people in this case – such subjects are within the personal knowledge of the

witnesses. In particular, Plaintiff avers that Beecher has 39 years of experience in applying the norms of the accounting profession to the context of U.S. Steel's real estate accounting practices. Kelly, likewise, has a bachelor of science degree in accounting, an MBA, is a certified management accountant and CPA and has 20 years of experience applying the principles of the accounting profession in the context of U.S. Steel's business.

Federal Rule of Evidence 702 recognizes that a witness may become qualified to offer opinion testimony "by knowledge, skill, experience, training, or education." Rule 701 also permits the admission of "lay opinion testimony" that is rationally based on the witness' perception or is helpful to clearly understanding the witness' testimony or to determining a fact in issue. In *Donlin v. Philips Lighting North America Corp.*, 581 F.3d 73, 81 (3d Cir. 2009), the Court of Appeals for the Third Circuit explained that if a lay witness has particularized knowledge by virtue of his/her experience, he/she may testify-even if the subject matter is specialized or technical-because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Fed. R. Evid. 702. This will be a very accounting-intensive case, as both sides will apparently present exhaustive testimony about a myriad of alleged accounting work-related performance accomplishments and/or errors committed by Kelly. It would be unfair and impractical to prevent accountants (on behalf of both sides) from talking about their work. Indeed, such testimony is at the core of this case.

That does not end the analysis, however. In his pretrial statement, Plaintiff indicated that he may seek to elicit expert testimony from Beecher regarding the norms of the accounting profession and U.S. Steel's accounting practices. Beecher was not disclosed as an "expert witness" pre-trial in the case pursuant to Fed. R. Civ. P. 26(a)(2) and did not prepare and submit an expert report pursuant to Fed. R. Civ. P. 26(a)(2)(B). Plaintiff will not be entitled to confer an

5

inappropriate aura of expertise upon Beecher's testimony by presenting him as an "expert witness." *See Donlin*, 581 F.3d at 80-81. As explained above, Beecher will be permitted to testify as a layperson, including his experience with U.S. Steel's accounting practices and his view of Kelly's performance while Beecher was employed by U.S. Steel as his supervisor. Beecher will not be permitted to testify about the standards and expectations imposed by Recchia on the accounting department after his retirement, nor will he be permitted to offer opinion testimony as to Kelly's performance after Beecher had retired. Defendant will have an opportunity to assert specific objections at trial. In accordance with the foregoing, this motion in limine is **GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE**.

Kelly's Opinion About His Own Performance

U.S. Steel contends that Kelly's personal opinion regarding his performance is irrelevant and should be excluded. U.S. Steel argues that the perception of the decision-maker (in this case, primarily Recchia) is the only relevant consideration. Plaintiff points to numerous Third Circuit cases, as cited in the Court's Summary Judgment Opinion, which have recognized that an employee's testimony about his/her own performance is relevant under the facts and circumstances of this case. The Court stated:

> U.S. Steel relies on *Billet v. CIGNA Corp.*, 940 F.2d 812 (3d Cir. 1991) and asserts that Kelly's own view of his performance is without merit at the summary judgment stage. However, the court in *Sempier* found that "*Billet* does not stand for the proposition that the employee's belief that his performance was satisfactory is never relevant." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995) (*citing Billet*, 940 F.2d at 812). Moreover, Kelly has both testified that his performance under Recchia was the same as it always had been, and notably, has submitted an affidavit from Beecher, his prior supervisor. Thus, Kelly's past performance is not based solely on his own subjective opinion. The evidence could allow a reasonable jury to infer that Recchia sought Kelly's termination from the start of her role as his supervisor.

6

The Court adheres to this analysis. Kelly will be entitled to present his evidence of alleged pretext to the jury, including his own opinion of his performance. U.S. Steel will have ample opportunity to cross-examine Kelly, and to present its own evidence in the same regard. The Court will thoroughly instruct the jury as to the rules of law that must be followed in deciding this case, and will explain to the jury that it is not permitted to find intentional discrimination simply because it may disagree with U.S. Steel's business judgment. In accordance with the foregoing, this motion in limine is **DENIED**.

Age-Related Comments by Recchia and Harper

U.S. Steel seeks to exclude two specific comments. First, Recchia allegedly stated to Kelly in June 2009: "you need to step it up because it's kinda late for you to be looking for another job." Second, Nate Harper allegedly asked Beecher in late 2008 to identify a person to be terminated, and when Beecher named a "younger employee," Harper responded: "What about Kelly?" When Beecher responded that Kelly was one of his best employees, there was no further discussion and nobody was terminated at that time. Kelly never had any direct interactions with Harper. *See* Plaintiff's Counterstatement of Facts ¶ 67-69.

The alleged comment by Recchia is admissible. The comment was made by the alleged primary decision-maker, proximate in time to the process through which Kelly was placed on the PIP and eventually terminated, and a reasonable jury could infer an age-based animus by Recchia.

The alleged comment by Harper will not be admissible. Harper was not directly involved in the determination to terminate the employment of Kelly, and indeed, he had no direct interactions with Kelly. The alleged comment was remote in time, occurred while Beecher was

7

still Kelly's supervisor, and did not result in anyone being terminated. Moreover, a reasonable jury could not infer an age-based animus from Harper's alleged actual words – "What about Kelly?" There is no evidence that Harper even knew Kelly's age, or that the other individual named by Beecher was younger, much less any age-based bias by Harper, a non-decisionmaker. This "stray comment" is not probative and will be excluded.

In accordance with the foregoing, this motion in limine is **GRANTED IN PART AND DENIED IN PART**.

Back-Pay

U.S. Steel contends that Kelly is not entitled to backpay from February-August 2010 because he failed to mitigate his damages. In particular, U.S. Steel argues that Kelly did not produce any documents to reflect that he was engaged in a diligent search for employment prior to August 2010. In response, Kelly points out that an alleged "failure to mitigate" is an affirmative defense on which U.S. Steel bears the burden of proof. Kelly also represents that he was actively looking for work during the disputed time period (and will testify to that fact), but was not aware that he should retain his documentation of those efforts.

The Court agrees with Plaintiff. It is premature to definitively rule on this affirmative defense and Kelly is entitled to testify regarding his mitigation efforts during this time period and Defendant is free to refute same, i.e., it is a factual issue. Accordingly, this motion in limine is **DENIED**.

Lost Pension Benefits and Damages Exhibits

U.S. Steel contends that Kelly should not be permitted to testify about his alleged lost

pension benefits because he never identified an expert witness to provide a computation. Plaintiff contends that an expert is not necessary because: (1) his pension is derived from a standard formula as calculated on the U.S. Steel Benefits Information Management System (BIMS); and (2) it is based on simple arithmetic. Specifically, Kelly represents that he plugged in numbers based on 30 years of service into the BIMS database several years ago, while he was still employed by U.S. Steel, and that BIMS allegedly reported that his pension would have been valued at $800,000.00 at the time.

U.S. Steel asserts that Kelly never provided this explanation or any lost pension calculation in his discovery responses throughout this litigation, and represented in his Initial Disclosures that an expert witness would be retained to compute damages. Kelly now explains that he did not disclose the BIMS calculation earlier because he had lost access to that system after his termination. Kelly's explanation is not persuasive and does not justify his proffered testimony. Because Kelly had allegedly performed his potential lost pension calculation while still employed by U.S. Steel, he clearly possessed that information -- and had a duty to disclose it -- during discovery. In the alternative, Kelly could have obtained those calculations from U.S. Steel during discovery.

Subsequent to U.S.Steel's motion in limine, Kelly provided Plaintiff's Exhibit 51 to U.S. Steel and the Court. U.S. Steel vigorously objects to this exhibit, which purports to be a calculation of Projected Pension Benefits prepared for Tom Beecher – not Kelly.[2] Defendant objects that Exhibit 51 was produced one week in advance of trial, in substantial prejudice to U.S. Steel; was not referenced as the basis for a calculation in Kelly's Initial Disclosures or other

---

[2] U.S. Steel also objects to Plaintiff's Exhibit 46, a lengthy document which reflects the terms of the U.S. Steel pension plan for salaried employees, pursuant to Fed. R. Evid. 403. The Court agrees with U.S. Steel.

9

discovery responses; is contrary to Plaintiff's representation that a damages expert witness would be retained; and that the information in the Beecher pension calculation is "strikingly different" than the pension to which Kelly may have been entitled. For example, U.S. Steel points out that Beecher had over 42 years of service with U.S. Steel and higher career earnings. The Court agrees with U.S. Steel. Plaintiff's Exhibit 51 will not be admissible into evidence.

To the extent that Kelly has documents which reflect his lost pension calculation based on the BIMS system and failed to provide them during discovery, he will not be permitted to introduce them at trial. Fed. R. Civ. P. 37(c)(1). To the extent that Kelly seeks to testify to his personal recollection of the BIMS calculation – with no supporting documentation and/or by comparison to the calculation of Beecher's alleged pension benefit -- such testimony is inherently speculative and unreliable. In *Donlin*, our Court of Appeals concluded that an employee's testimony concerning her calculation of front pay was inadmissible under Federal Rule of Evidence 701 because she lacked a "reasonable basis grounded either in experience or specialized knowledge for arriving at the opinion that he or she expresses." 564 F.3d at 217; *accord McKenna v. City of Phila.*, 636 F.Supp.2d 446, 467 (E.D. Pa. 2009) (employee's testimony excluded as unreliable because he failed to establish basis for assumptions/calculations of front pay). Even though Kelly possesses the education, training and experience to render such an opinion, he has failed to provide a foundation to make such testimony reliable. Kelly has no documentary foundation for his assertions and $800,000 is a suspiciously-round number for a calculation on which the precise amount could and should have been obtained. Moreover, Kelly represented in his discovery responses that any such testimony would be presented by way of expert testimony and the Court will not countenance this apparent attempt at last-minute gamesmanship.

Plaintiff's Exhibit 45 reflects a compilation of Kelly's claims for damages, including back pay, post-termination income, front pay, and lost benefits – including a claimed Total Pension Loss of $503,325.00. U.S. Steel contends that Exhibit 45 should be excluded from trial. The Court agrees with Defendant. For the reasons set forth above, Kelly will not be permitted to pursue a claim for lost pension benefits. Accordingly, Exhibit 45 would be unduly prejudicial and confusing and may not be presented to or considered by the jury.

Accordingly, Kelly will not be permitted to testify or introduce documents as to his alleged lost pension benefit. These motions in limine are **GRANTED**.

Front-Pay

U.S. Steel contends that Kelly's lay opinion and evidence regarding front pay should also be excluded for lack of an expert witness. U.S. Steel also contends that Kelly's claim for $899,236 in front pay for the next ten years (through February 2022) is excessive, fails to reflect his earnings in 2011 and 2012, and is unduly prejudicial. U.S. Steel correctly points out that front pay is limited to a "reasonable" future period for the Plaintiff to be re-established in the job market. *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 889 (3d Cir. 1984).

Kelly argues that because he is a CPA, he is fully capable of performing such calculations and therefore, *Donlin* (excluding front pay testimony by short-term employee without financial expertise) is distinguishable. He suggests that the circumstances of this case are akin to those in *Maxfield v. Sinclair Intl.*, 766 F.2d 788, 797 (3d Cir. 1985) (long-term employee permitted to testify regarding projected front pay). Kelly concedes that his damages chart did not reduce his

claimed front pay damages to reflect his mitigation efforts or "sporadic" consulting work.[3] Nevertheless, he contends that his testimony (and his cross-examination by U.S. Steel attorneys) should be presented to the jury.

An award of front pay – which reflects a loss of future earnings post-trial – is a discretionary, equitable alternative to reinstatement. In *Donlin*, 581 F.3d at 86 (a Title VII case), our Court of Appeals explained that the issue of front pay need not be submitted to the jury for an advisory verdict. *Id.* at 88 n.11. However, in *Maxfield*, 766 F.2d at 796 (an ADEA case), the Court of Appeals instructed that if the trial court determines that reinstatement is not feasible, the amount of front pay is a jury question.

The Court agrees with Kelly that he is qualified to testify about front pay damages, based on his education, training and long-time employment by U.S. Steel. However, an award of front pay must be limited to a reasonable time period for Kelly to re-establish his rightful place in the market. Although no precise calculation is possible, the Court agrees with U.S. Steel that a ten year period of front pay is not reasonable under the facts and circumstances of this case, given Kelly's experience, professional status as a CPA and earnings record. In *Goss*, the Court of Appeals affirmed an award of front pay for a period of four (4) months. 747 F.2d at 890. The Court also agrees with U.S. Steel that Kelly's front pay claim must reflect an offset for his mitigation efforts. *Maxfield*, 766 F.2d at 796.

The Court will submit the issue of whether Kelly is entitled to front pay, and the amount thereof, if any, to the jury and will take under advisement the ultimate decision regarding reinstatement or front pay. In accordance with the foregoing, this motion in limine will be **DENIED**.

---

[3] The parties stipulated that Kelly earned $58,223 in 2011 and $33,715 as of November 15, 2012.

Deposition Testimony of Maria Lamb

Maria Lamb is a U.S. Steel human resources employee who participated in the events leading to the termination of Kelly's employment. The parties took her video deposition on October 31, 2012 for use at trial, because Ms. Lamb is unable to be present in the courtroom.

Plaintiff's first objection relates to the reason for Ms. Lamb's absence, namely that she has a high-risk pregnancy with some complications, and her doctor has asked her to limit her activity. Ms. Lamb's explanation comprises approximately ten (10) lines of the written transcript. Plaintiff's objection, that this short and seemingly innocuous response will elicit unreasonable sympathy for Ms. Lamb from the jury, appears to the Court to be overly litigious. However, U.S. Steel has agreed to simply inform the jury that Ms. Lamb is unavailable at trial for health reasons. Accordingly, this motion is **DENIED AS MOOT**.

Plaintiff also objects to several other statements in the deposition, on the ground that they constitute hearsay, and asks that such statements be redacted. Kelly also contends that such statements should be precluded pursuant to Fed. R. Evid. 403 as they unfairly bolster the testimony of Recchia.

U.S. Steel contends that the statements at issue were rendered for non-hearsay purposes, namely, to show the effect on Lamb and the basis for her subsequent conduct, rather than for the truth of the matter asserted. Specifically as to the challenged conversations with Gregory Zovko and Ronald Sloan, U.S. Steel contends that Lamb factored the information into the decisions regarding Kelly's discharge. Defendant points out that Sloan will be a witness and can be examined as to these statements. Defendant contends that the testimony is not unfairly prejudicial pursuant to Fed. R. Evid. 403, but rather, bears directly on the decision to terminate

13

Kelly's employment and the decision-making of U.S. Steel in that regard.

U.S. Steel's citations to criminal cases as authority are easily distinguishable and not persuasive. Given the exigency of trial, the Court has not conducted lengthy independent research. Some, but not all, of the testimony to which Plaintiff objects does reflect hearsay, and the apparent impact of those statements does go to the truth of the matter, i.e., whether Kelly was terminated for poor performance. Lamb is certainly entitled to testify regarding the process U.S. Steel followed in making this decision. However, to the extent that U.S. Steel seeks to introduce the substance of opinions of Kelly's performance held by other U.S. Steel employees, it must do so through those employees – rather than through statements made out of court to Ms. Lamb.

The specific statements that will be excluded are: Page 49, lines 5-7; Page 51, lines 3-15; and Page 137, Lines 9-13. As to the statement on Page 51, because Sloan will be a witness, he will be able to testify to this topic.

In accordance with the foregoing, these motions in limine are **GRANTED IN PART AND DENIED IN PART**.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**JOHN J. KELLY,**

    **Plaintiff,**

    vs.

**UNITED STATES STEEL CORPORATION,**

    **Defendant.**

) 
) 
) 2:11-cv-00193 
) 
) 
) 
) 
) 
)

## ORDER OF COURT

AND NOW, this 9th day of November, 2012, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that DEFENDANT'S MOTION IN LIMINE (Document No. 68); PLAINTIFF'S MOTION IN LIMINE TO STRIKE PARTS OF MARIA LAMB'S VIDEO DEPOSITION (Document No. 79); and DEFENDANT'S OBJECTIONS TO PLAINTIFF'S EXHIBITS (Document No. 80) are **GRANTED IN PART AND DENIED IN PART** as explained therein.

BY THE COURT:

/s/ Terrence F. McVerry
United States District Court Judge

cc:    **Bruce C. Fox, Esquire**
      Email: bruce.fox@obermayer.com
      **Andrew Horowitz, Esquire**
      Email: Andrew.horowitz@obermayer.com
      **Anthony F. Jeselnik, Esquire**
      Email: afjeselnik@uss.com
      **Rodney M. Torbic, Esquire**
      Email: rmtorbic@uss.com